GLICKSTEIN, Judge,
concurring specially.
I write to advise what occurred in this and a companion case, and to express my view that an opinion, rather than a per curiam affirmance, would have been appropriate here.
This is an appeal by Pettegrove Truck Service from the final judgment entered against it after a non-jury trial in the declaratory judgment action brought by Pet-tegrove’s insurer, Transportation Casualty Insurance Company (TCI). The declaratory judgment was filed by TCI which questioned whether it had a duty to defend or indemnify Pettegrove for damages caused by one of its truck drivers, Charles Shaw. The final judgment released the carrier from liability either to defend, or provide liability coverage to Pettegrove for damages arising from Shaw’s accident. Super and Pena, the appellants in the companion case, No. 88-2235, are individuals injured in the accident who seek to avail themselves of the liability coverage purchased by Pet-tegrove from TCI.
The parties stipulated that: 1) on October 10, 1987, Charles Shaw, one of the defendants below, was operating a truck owned by Pettegrove Truck Service, Inc. when he had an accident in which Wayne Super and Deborah Pena were injured; and 2) TCI had issued a policy of business automobile insurance to Pettegrove Truck Service which was in effect on the date of this accident.
In May 1987, just before binding the coverage, Mr. Morgaman, of TCI, met with Donna Pettegrove, president of Pettegrove Truck Service at the Pettegrove offices. At that time, Morgaman inspected the vehicles and delivered and explained the quote. Ms. Pettegrove signed various underwriting representations including the rejection of uninsured motorists coverage, a promise to maintain backup alarms on the vehicles, and an agreement to submit the names of all drivers to TCI for approval. The underwriting representation at issue here provides in pertinent part:
As an inducement to Transportation Casualty Insurance Company, Inc. to underwrite and cover the auto liability risk, the insured affirmatively represents and warrants that its vehicles do not carry materials commonly known as hazardous waste and will not do so during the policy period.
Further, the insured agrees to pre-sub-mit to Transportation Casualty Insurance Company, Inc. all drivers for approval prior to permitting said drivers to drive an insured vehicle.
I HAVE READ AND UNDERSTAND THE FOREGOING REPRESENTATIONS AND THAT TRANSPORTATION CASUALTY INSURANCE COMPANY, WOULD NOT HAVE UNDERWRITTEN MY ACCOUNT BUT FOR RELIANCE UPON SAID REPRESENTATIONS.
(Emphasis in paragraph 2 added.) The latter representation is the one at issue in this case. It was explained at that meeting that one of the reasons why TCI was able to charge lower premiums was that the pre-submission of drivers’ names allowed TCI to control its risks.[1] There was evidence that Morgaman had explained to Pet-tegrove that she would have a continuing duty to get approval from the carrier before allowing new drivers to drive company vehicles but Morgaman admitted that that *236 condition did not appear under “special conditions” or elsewhere on the binder that Pettegrove was issued subsequently.
TCI accepted Pettegrove as a risk and issued a liability policy effective from June 24, 1987 through June 24, 1988. Although in September of 1987 Pettegrove sent TCI an updated list of drivers, she denied that she submitted the list in order to comply with the underwriting representation. She insisted that she was unaware of that representation and had sent the updated list to TCI merely as a means of determining for herself what the employees’ driving records were since she was unable to conduct that investigation herself. The parties stipulated that Charles Shaw’s name was not on either of the lists submitted to TCI. Within a few days after he was hired, Charles Shaw was involved in an accident while driving a Pettegrove truck. Third parties Wayne Super and Deborah Pena were injured and sued Pettegrove. TCI denied coverage based on Pettegrove’s failure to pre-submit Shaw’s name to TCI for approval.
TCI characterized the failure by an insured to comply with the promise to pre-submit drivers’ names as a “misrepresentation in obtaining the policy.” Morgaman insisted that TCI relies upon the information provided by the prospective insured in evaluating the risk and rating the policy and he stated that it is the underwriting policy of TCI not to accept drivers with suspended licenses as insureds. He said that if Shaw’s name had been submitted to TCI for approval, Shaw would not have been approved and coverage for him would have been specifically excluded.
The basis of the trial court’s final judgment, denying coverage to the insured was that Pettegrove’s failure to submit the name of Charles Shaw was a material misrepresentation on which TCI relied in accepting the risk and evaluating the hazard. The language of the final judgment, which we have affirmed, tracks section 627.-409(l)(c), Florida Statutes (1987), the applicability of which constituted the principal issue disputed below.
Section 627.409(1), Florida Statutes, defines all statements and descriptions in any application or in any negotiations for an insurance policy as “representations and not warranties.” It provides that
Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless:
a) They are fraudulent;
b) they are material either to the acceptance of the risk or to the hazard assumed by the insurer; or
c) the insurer in good faith would either not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.
(Emphasis added.)
The “misrepresentation” at issue here is Ms. Pettegrove’s signature on the underwriting representation which evidenced her promise to pre-submit all drivers’ names for approval. TCI contends that the insured’s promise to allow TCI to pre-screen all drivers before allowing them to drive was one of the primary factors which allowed TCI to accept Pettegrove as a risk and to charge much lower premiums than are customary in this risk category. Based on Ms. Pettegrove’s failure to pre-submit Charles Shaw’s name and her testimony denying any awareness of the continuing requirement to pre-submit drivers’ names for approval to TCI, TCI views her signed agreement to comply with that requirement to be a material misrepresentation which justifies voiding the coverage as to this loss.
It is not sufficient for an insurer to void coverage pursuant to section 627.409 simply by proving a material misrepresentation by the insured. Section (l)(c) requires proof that the insurer would have changed its position had it been given the true facts. The determination of whether an applicant *237 has misrepresented or concealed facts material to a risk or has breached a warranty or condition and whether the insurer was induced by any such misrepresentation to issue the policy solely on insured’s statements are general questions of fact for a jury, unless the evidence is conclusive. Lamm v. Prudential Insurance Co. of America, 179 So.2d 238 (Fla. 3d DCA 1965); Old Southern Life Insurance Company v. Kirby, 522 So.2d 424 (Fla. 5th DCA 1988). Thus, the question presented here is whether the trial court, sitting as the trier of fact in this non-jury trial had sufficient competent evidence on which to base his conclusion that had Shaw’s name been submitted to it for approval, TCI would have excluded coverage for him or in some other way responded to limit the hazard presented by Shaw.
TCI’s sole argument on this point is based on a motor vehicle report obtained after the accident through a private subscription service which showed that Shaw’s driver’s license had been suspended. Because TCI was unable to authenticate this document, the trial court agreed with appellant that it was hearsay which could not be admitted for the truth of the matter asserted, i.e., to prove that Shaw’s license was suspended. It was admitted, however, as a business record, for the limited purpose of allowing testimony from TCI as to what it would have done had it received Shaw’s name and ordered that report before the accident. We have not found error in this ruling of admissibility for that purpose and recognize that no evidence was adduced to prove whether Shaw was, in fact, licensed, or whether he presented a driving risk.
As for the applicability of section 627.-409(2), section (2) provides that:
A breach or violation by the insured of any warranty, condition, or provision of any ... transportation insurance policy, contract of insurance, endorsement, or application therefor shall not render void the policy or contract, or constitute a defense to a loss thereon, unless such breach or violation increased the hazard by any means within the control of the insured.
It is undisputed that Pettegrove submitted the names of all of its drivers in April along with its application for insurance and that an updated list showing the addition of nine new drivers was sent to TCI in September. It was stipulated that the name of Charles Shaw, who was hired just a few days before the accident, was never submitted to TCI for approval. Arguing that Pettegrove fully complied with the underwriting requirement at the time she applied for insurance in April and that she continued to do so through September by sending an updated list of drivers, appellant contends that her failure to comply did not occur until just before the accident in October when Pettegrove hired Shaw but did not submit his name to TCI for approval. According to appellant, that omission was, at most, a breach of a condition under section 627.409(2) which "shall not render void the policy ... unless [it] increased the hazard by any means within the control of the insured.” § 627.409(2), Fla.Stat.
Even if we were to deem Pettegrove’s failure to presubmit Shaw’s name as a “breach” under section 627.409(2), rather than a “misrepresentation” under section 627.409(1), I believe that the application of these facts to a section 627.409(2) analysis will lead to the conclusion that the breach increased the hazard, thus justifying the denial of coverage and a defense.
I wish the majority had written on the case. Had such opinion been written, the state’s highest court could have afforded relief if, upon further review, we were found to be incorrect. No authenticated driver’s record, then no opinion brings to my mind the maxim prefixed to Poor Richard’s Almanac (1758):
[F]or want of a nail, the shoe was lost; and for want of a horse, the rider was lost.

. The evidence was that Pettigrove was paying $6,800/year/truck in the high risk pool whereas TCI offered her a rate of $4,500 for the same coverage.